Good morning. I'm John Rhodes from the Missoula Office of the Federal Defenders of Montana. I represent Roger Roybal, and I would like to try to reserve two minutes for a rebuttal. Showing is not distribution. Under any definition of distribution, if you simply show the Even the definition that's in the guidelines? Yes, Your Honor. And to prove that point, if you look at the guideline 2G2.2B3, there's a descending gradation of points depending on how the child pornography was distributed. And ultimately, it says distribution other than the distribution described above results in a two-point enhancement. Distribution under the guidelines doesn't require a third-party recipient. In the definition of distribution, production of child porn can be distribution, intent to distribute can be distribution. So there's no third-party recipient in those instances. And if merely showing child pornography is distribution, then every case would have a guideline enhancement for distribution, because in every case, the defendant would have shown it to, in my cases, himself. And so that shows how illogical it is. Well, in this case, as I understand the facts, and correct me if I'm wrong, there's the victim testified that she was – said she copied these. After being shown the images, she copied them, put them in some sort of notebook. Why isn't that distribution? In other words, what's happened is we've taken the images off the Internet and distributed them to her. First, Your Honor, she made – there was no testimony that Mr. Roybal permitted her to do that. She simply said she did it, period. But wasn't her only access to this because of Mr. Roybal? I mean, I understand there's no testimony that he said, please copy these for me or I allow you to copy these for me, but wasn't her access to these images because Mr. Roybal had shown them to her? Your Honor, if you read the entire transcript of her testimony, she was active in Internet sex activity, including with underage males, independent of Mr. Roybal. So there's no evidence that he distributed child pornography to her to make that magazine. Plus, Your Honor, that wasn't advocated below by the government. There was no fact-finding on it. It's just an issue that's sort of out there that was never developed. Well, there was a fact-finding, though, was there not, that Mr. Roybal engaged in the transfer of the child pornography through electronic wires. He took the computer, hooked it up to a bigger screen so that the young lady could see the material better. Isn't that correct? Your Honor, if you know how computer forensics work, which I jokingly but truthfully say everything I know about computers I've learned from child porn case, when an image is downloaded onto a hard drive and then accessed to be displayed on a screen, be it the computer monitor or a larger viewing screen, there is no actual movement of the file. It's not transferred. It's not electronically moved. It's merely accessed. Well, I do know a little bit about technology, and that's not correct. Whether you do it by Wi-Fi or whether you do it by wires, when you take the child porn, which in this case would be in digital format, and you transfer it to a large monitor or something of that nature, there is a transfer. There's an electronic transfer. So my question is, since the district judge did find, and you didn't object to the finding, that Mr. Roybal transferred child pornography through electronic, in this case electronic wires, why would that not satisfy the requirement here, even if you're correct about the point you make about the district judge's actual focus? Because, Your Honor, I think we disagree on the computer forensics. Okay. When an image is accessed on a hard drive to be displayed on any sort of screen, there is no transfer of the image. There's no electronic movement of the image. So let's say, for example, I know there's a monitor in the other room. Let's just say that we won't make child pornography, but let's just say we have a picture of you standing here, and by Wi-Fi it goes to the other room there. So you're saying that that image is not transferred from here to that monitor. Specifically, and I hate to keep coming back to child porn, but that's what this case is. Well, you're into it, so what can I say? When it's downloaded and then displayed on a screen, there is no electronic transfer. I understand. I get the download part. But what I'm saying is once it's on the computer and once he makes it available for her to see on the larger monitor, there is a transfer from the computer to the monitor, either through wires, which is what the district court found, or through Wi-Fi. In either event, it's electronic. It's a digital transfer of this information. I disagree from a forensic standpoint. Plus, Your Honor, the district court's finding wasn't as nuanced as you're suggesting. The district court only found that showing was distribution. It didn't get into the details. Can't we sustain the district judge's decision if there's any legal basis for what he did, even though it might be different than what he started with? On that issue, yes. On the sharing, the idea that she somehow, with Mr. Roybal's involvement, helped make a child porn magazine, that cannot be a basis. Okay, so let's say we put that in. And why can't it? Because it was never, first, there's a clear and convincing evidence standard, Your Honor. There was no finding of fact on that. And had that been advocated by the government, I would have pointed out, Your Honor, that she said something about this catalog or scrapbook, whatever you want to call it, being in the garage. There was a search of the residence, and in the garage found was a pregnancy test, two, I believe, empty bottles of alcohol, cigarettes, some sort of oil, cigars, tobaccos, condoms. There was no child pornography magazine. Let's go back to the statutory language, and let me just ask you. It's D that we're talking about, correct? Distribution to a minor that was intended to persuade, induce, et cetera? Yes, Your Honor. And you don't contest that if this was distributed, it was intended to entice, persuade, et cetera? Correct. It's the word distribution we focus on. Okay. So if Mr. Roybal had, instead of showing the victim these images on the computer, had copied them on a printer and showed them to her, that would be distribution, in your view? Yes, because there would be a transfer. Similarly, when I hold this book up, I don't think anyone says I've distributed it to you, but if I handed it to you, and certainly for you to keep, that would be a transfer. Well, the question is whether you distributed the information or the pornography as opposed to distributed the book, I guess. So if you had some information inside that book and you showed me that information, would you be distributing that information to me? No, not in a legal sense. I think the only way you can get there is what the government invokes, some sort of metaphysical abstract sense. I guess my problem is I'm having a hard time figuring out what the extra level of blame, criminality, is if one copies it and shows it to a minor, as opposed to just showing the minor the image on the screen. If that's what the drafters of the guidelines were worried about, why did they make this – why did they raise six levels for copying it, but no levels for merely showing it? Two responses, Your Honor. First, that goes to the B-1 issue, whether there should be a two-point reduction because the conduct was limited to receipt of child pornography. And there the operative word, the key word is conduct. And so if the conduct is limited to the offense conduct, Mr. Roybal should have received a two-point reduction. Right, but we all agree that he did something more than simply receive child pornography or look at it. He showed it to this young lady. And so my question is why would the guidelines give you a six-level enhancement if you made a paper copy of it and showed it to her, but no enhancement at all if you merely let her look at it? Because that would be a distribution. In this instance, it was not a distribution, and it may be he's not eligible for the two-point reduction to account for that extra activity. Plus, as a matter of statutory law, as Judge Mahan knows, that would go to the nature and circumstances of the offense under 18 U.S.C. 3553A. And if the sentencing judge considers that an aggravating factor, it can be accounted for that way. It cannot be accounted for as distribution. We've run over your time by our questioning. We're going to give you a little more time. But I'd like you to, when you come back, tell us what you would like us to do with respect to this condition of supervised release in terms of the penal plethysmograph testing. I understand both you and the government agree that there are inadequate findings to require that, and yet both of you say, I gather, that a remand on that is not necessary. So what do you want us to do with that point? You don't need to tell us now, but when you come back up for a brief rebuttal, keep that in mind, will you please? Thank you, Your Honor. Okay. We'll hear from the government. Good morning. Laurie Sook for the United States. Your Honors, we can't divorce this case from the facts. This is not an incidental showing where somebody walked by a screen and just saw child pornography, held up the book, just saw child pornography. This is a case where showing to this child was instrumental to the offense. It's not a ---- Well, nobody disputes that. I guess the question is whether or not it's distribution or whether or not somehow the guidelines have been written in a way that doesn't cover this conduct. So why is it distribution? Because of the facts of this case. It's distribution because it is a deliberate showing that is as much a delivery  So it's not ---- you shouldn't be worried about opening up the floodgates of these enhancements to showing every single child pornography, child pornographer being subject to these enhancements. That's not what the government is advocating here. We cannot take and separate what the district court did here from the facts of this case. There was detailed testimony from the victim and with respect to all of the factual issues. The court found, with respect to not only the showing, not only showing on the television screen, not only making the book, all of this was testimony of the victim that the district court credited as credible, truthful movements. Well, let me ask you then, because your opponent says we can't rely on the victim's book, what's your position on that? Why not? The district court made a factual finding that she was credible. These are facts in the record. And you can affirm on any basis in the record, and there's no dispute in the record that the testimony was given to the district court and the district court credited it. Along that same line, I assume you heard what I asked opposing counsel about. Yes. Connecting the computer to the large monitor with wires, even if the other problem, the other approach were problematic, wouldn't that satisfy the distribution or transfer situation? Yes, Your Honor. It would. And we could affirm on any basis that the district court made sufficient findings. Yes. And this is one of the findings he made, right? It is one of the findings he made. Yes, Your Honor. So in the government's view, if Mr. Roybal were looking at the screen, and put aside the intent for a second part of the statute, because there's other parts. Distribution to a minor, it's a five-level increase without the requisite intent. So let's just focus on C for a second. If Mr. Roybal were looking at the screen and a young lady walked through the room and he said, hey, take a look at this, distribution to a minor? Certainly. Yes or no? I think it's got to be yes, otherwise your argument falls apart, doesn't it? It doesn't fall apart because that certainly isn't the facts that we're dealing with. No, no, that's why it's a hypothetical. I mean, I'm trying to figure out what the government's position is on distribution. And so let's take distribution without intent to induce and entice, et cetera. Mr. Roybal enjoys watching child pornography. It's a crime. A child comes in the room and he says, look at this image on the screen. Is that distribution? It would be. But, again, he's pointing it out. I mean, there's more. What I don't want the Court to think the government is advocating is that somebody simply walking by a screen and viewing the child pornography, nothing more, we're asking for this enhancement. You're giving me some more facts. You're giving me some intent. So your view is that distribution requires an intent that somebody else received the material? Yes. There could be a factual situation that I have not thought about where no intent would be involved, that there may be a finding of distribution. But, Your Honor, I haven't thought about that. Well, my problem with the case is I think we have to think about that, because you're asking us to define distribution. Exactly. I'm asking you to find distribution, though the government is asking you to find it, and we do have the intent. So we're not opening that issue that I know should concern the Court about this enhancement applying in every single case. That's not what we're asking you to do. So following up on Judge Hurwitz's point, take my analogy here. The pornographic material, the child porn, is on the computer. Mr. Roybal connects the computer to the monitor with some wires. He does so, allegedly, with the intent that the victim would watch the porn and see it better there. You've said you agree that is a transfer, that's a distribution. Yes. So the elements of that enhancement would be then there's child porn, there is a connection of the computer to the monitor, in other words, putting something in a different place electronically with the intention that the victim see that material there. So there are basically three elements to that. Is that correct? Yes, Your Honor. Okay. And I think that satisfies any concern the Court would have in applying this enhancement in this way, in a showing situation, as the district court labeled it. With respect to your question regarding penile plethysmograph, I did have to practice saying that. How do you say it again? Penile plethysmograph. Boy, I read about that and I can understand why people don't want that. Exactly. There needs to be special findings here. Interestingly enough, I've never had a situation where we have this situation and no remand, but. So what do we do? Just tell us, do we issue an opinion or a memorandum disposition that says the parties agree that the conditions do not, that the findings don't allow this? Yes. And that's sufficient. We'll have to ask your opponent, but is that sufficient from both sides' perspective? It is sufficient. We don't need to remand for this issue. That would be sufficient. What's your best case on this distribution issue? You know, factually, I absolutely disagree with Mr. Rhodes. The Postel case is factually on point. And although that district court did not have to find distribution because of agreement between the parties, the reasoning of the court is just smack dab on as to why showing images to a child in this factual situation is distribution. But quite frankly, all of the cases that we tried to find, and certainly some of them are unpublished, they're all persuasive, none of them are binding on you, but they all flesh out the reasoning of why showing in different contexts are distribution. And those cases are the Postel case that I started out with. And I would say factually that's our very best case. Then you have the Holt case where the Eleventh Circuit held distribution, it was more than mere solicitation, by using a cell phone to show an image to a third party. You have the Berenger case where the two-level reduction was denied, although the distribution enhancement wasn't given, for showing materials to his wife and intending his stepdaughter to see those images as well as he was viewing them. All of those seem to have an intent requirement, just as we discussed before. They do. They all seem to do that. And as much as I hate to bind us to never a situation where you would not apply this without intent, it's very hard for me to fathom. So for purposes of this particular case, as we go through the facts, the district judge would have had to find the requisite intent, right? Yes, he did. And yes, he certainly did. I think you're right, but he wouldn't have had to do that, right? Yes. I'd have to agree with that, Judge Smith. I really don't see a situation where an incidental showing without that would be one where you would want to apply this enhancement. I gather, and this may be true of the Federal Public Defender as well, I gather that the Ninth Circuit needs a published opinion on this issue, right? Yes, please. Okay. All right. Any other questions? No. Thank you very much. Please. Let's give this gentleman, what did he have left before? Well, rather than zero, we're going to give you a minute and a half because we took you over a little bit with questions. So if you'll first of all respond to the question about the test and what you want us to do with that aspect of it. I believe it's pronounced plethysmograph, Your Honor. We don't have that testing in Montana, but I know the Middle District of California does, or the Central District, excuse me. And so I've talked with their defenders about it. But the law is absent special fact guidance. No, we agree that it can't be imposed here. The question is how do we do that? Do we just do that in our disposition? Yes. Okay. You agree that no remand is necessary. Whatever disposition we have in this case, we simply point out that both sides agree that the necessary findings were not made and this particular condition cannot be imposed on this defendant. Correct, Your Honor. Okay. With respect to this intent issue, focusing on the word distribution in the guideline application note one's definition of distribution, distribution does not require intent. There can be production alone can satisfy the distribution enhancement. You can produce any sort of picture for your own use without intending a third-party recipient. Do you have any case law for that? It's just the guideline definition that says production. Okay. I mean case law, though. I would have to go back and look. I don't have anything off the top of my head, Your Honor. Okay. So intent is not part of distribution. And that gets to my point. I would think that that would actually be of some benefit to you in some circumstances, that the government would have to, well, the binder of fact, in this case the judge, would have to have made a specific finding that there was intent. Because as was pointed out here, if you have somebody looking at their stuff and all of a sudden somebody wanders through and goes into the other room and they had no intention that the person see it, I gather if you were defending that person, you'd say, oh, no, no, that was an accident. There was no intention there. Why does intent hurt you or others that you might be representing in a similar factual situation? If the intent is to a third-party recipient, that's not what the guideline language says in terms of that catch-all two-point enhancement at the end of B-3, that any other distribution is two points. You always distribute to yourself. Okay. If I could just make two final points here. We'll give you 30 seconds. Sorry to be so tight on all this, but go ahead. First, I just wanted to inform the Court that Mr. Roybal is now being prosecuted in Missoula County for sexual intercourse without consent, which has a statutory minimum of 25 years, up to 100 years punishment, or alternatively a life sentence. So that's relevant to how are all these facts accounted for. Second, with respect to the distribution argument. How is that relevant for purposes of the distribution argument? Well, it's relevant in the sense that, A, as I already answered, the nature and circumstances of the offense can be accounted for under Federal sentencing. The two-point reduction issue, if the conduct of showing nullifies that two-point reduction under the guidelines, it's accounted for there. And my point is he's being amply punished now with a follow-up statement. And the district judge didn't know that at the time the sentence was handed down? No, he was aware of that. He refused to make the sentence. So how does that factor into what we do then? It doesn't in a technical sense, but it does in the sense of it's a third matter in which this conduct can be accounted for. Okay. Thank you both very much for your argument. The case just argued is submitted.
judges: Mahan, Smith, Hurwitz